ILLINOIS CANNING COMPANY, Appellant, v. FT. DES MOINES CANNING COMPANY, Appellee.

Contracts: AUTHORITY OF AGENT: RATIFICATION: SUFFICIENCY OF PLEADING. In an action to recover damages for the breach of an alleged contract for the purchase of goods made through a commission merchant, it is held that the letters and telegrams pleaded as constituting the contract are insufficient to show authority in the broker to make the sale and therefore the agreement is not enforcible; nor is the showing made sufficient to show a contract by ratification.

*Appeal from Polk District Court.*— HON. JAMES A. HOWE, Judge.

TUESDAY, JULY 2, 1907.

ACTION at law to recover damages for a breach of contract. A demurrer to the petition was sustained, and plaintiff appeals.— *Affirmed.*

*Dudley & Coffin* and *Fred F. Frost,* for appellant.

*Dale & Harvison,* for appellee.

BISHOP, J.— It is disclosed by the record that at the time in question plaintiff was engaged in the business of buying and selling canned corn, etc., at Hoopeston, Ill.; that defendant was engaged in the business of canning and selling corn, etc., at Des Moines, this State; and that the Pacific Selling Company, of Chicago, Ill., was engaged in buying and selling canned corn, etc., for a commission or brokerage. The petition alleges that the contract sued upon was in writing, and contained in the certain letters and telegrams attached to and made part of the pleading by copy. The substance of these are as follows: On February 7, 1903, defendant answered a proposal received from the Pacific Company, saying: "Your offer for 5 M cases Std. corn, 1903 pack. at 65c f. o. b. factory, received. Will accept order responsible party 65c factory, proportionate delivery. If order is placed with us corn will be loaded from our factory at Dexter. We would not care to accept offer on guarantee delivery. Enclosed find our blanks." To this the Pacific Company responded, saying: "We are unable to interest our trade here on your corn, *pro rata* delivery." February 12th, the Pacific Company wired defendant as follows: "Wire us refusal for to-day 5,000 futures at 65¢ factory, *pro rata* delivery subject to usual brokerage charges to us." And to this the defendant responded by wire as follows: "Will accept order responsible party, five thousand, sixty-five factory, *pro rata* delivery." Defendant followed this message by letter confirming the same, and adding: "Can submit samples if desired." The Pacific Company answered by

letter of same date saying: "In accordance with wires exchanged, we confirm sale for your account 5,000 cases Standard Iowa corn, pack of 1903, at 65¢ f. o. b. factory, *pro rata* delivery. Our buyer is thoroughly responsible, and we expect to be able to forward you contracts covering this lot of goods to-morrow. . . . As we are comparative strangers, it might be interesting for you to know something about us," etc. On February 13th the Pacific Company wrote defendant, saying: "Please forward contracts in favor of Illinois Canning Company, Hoopeston, Illinois, for the 5,000 cases of corn recently booked with you." On February 18th the Pacific Company wrote the plaintiff saying: "This is to advise you that the following purchases for your account: . . . From the Ft. Des Moines Canning Company 5,000 cases at 65¢, *pro rata* delivery." And on the day last mentioned defendant wrote the Pacific Company submitting samples of labels "from which your purchaser will likely select label for the 5 M case purchase recently made with this company." March 5th, the Pacific Company wrote plaintiff, saying: "We are in receipt of yours of the 4th, also contracts from the Ft. Des Moines Company. We are forwarding to-day contracts to the Ft. Des Moines Company, and as soon as same are returned to us will forward duplicate to you." And again, on March 25th, the Pacific Company wrote plaintiff, saying: "In reply to yours 24th in regard to contract for the Ft. Des Moines corn, upon looking this matter up we find the contracts are in the hands of the packer. We have written them to return the same."

The averments of the petition are that by the contract thus made, defendant authorized the Pacific Company to sell corn as therein indicated, and that the Pacific Company, acting as agent or broker for the defendant, did sell or agree to sell to plaintiff five thousand cases of corn on the terms and conditions as so indicated and authorized. "That at or about the same date plaintiff orally authorized the said Pacific Company to purchase said corn upon said terms and condi-

tions for it from the defendant." And plaintiff says that
it was and is responsible, and was at all times ready, able,
and willing to perform said contract, but that defendant
repudiated said contract and refused to perform the same.
It is then alleged on information and belief that defendant
packed sufficient corn to fill all its orders for the year 1903,
including the contract with plaintiff, but willfully and
wrongfully sold to other buyers, etc. Damages in a sum
named are alleged, and judgment is demanded.

The question made by the demurrer is whether or not
there is pleaded in the petition an enforceable contract as
between plaintiff and defendant. The trial court took the
view of no contract, and in this we concur. There are at
least two sufficient reasons why this is so. It will be ob-
served that the correspondence with defendant is limited to
the Pacific Company. If therefore, a contract as between
plaintiff and defendant arose when the former was advised
by the broker of a purchase from the latter made on its ac-
count, it must be because the broker was authorized by de-
fendant to contract on its behalf. This we think does not
appear. The initial letter to the broker, of date February
7th, was evidently brought into the pleading as explanatory
in character. It makes intelligible the telegrams which fol-
lowed as of date February 12th, and, as we have seen, the
express language of the letter, as well as of defendant's tele-
gram, is that: " Will accept order from responsible party."
Now, having in mind the fact that no previous business re-
lations had existed between the parties, defendant and the
broker, it seems plain to us that the language was under-
standable by the broker only in one way. In the first place,
there was to be an order. Clearly, this did not contemplate
an order from the broker, as the entire correspondence indi-
cates that the Pacific Company was not offering to contract
on its own account; rather, it contemplated an order from
an intending purchaser through the broker, and blanks were
inclosed with the initial letter for that purpose. So, too,

it is clear that the acceptance was to be by defendant. The abbreviated expression of the telegram could not well be understood as meaning otherwise than that "we will accept." Again, it was made a condition that the intending purchaser must be a responsible party, and the plain inference is that otherwise his order would not be accepted. Who was to determine this? Surely not the Pacific Company. The right to determine lay in the same hands as the right to accept an order. And the correspondence does not even suggest an intention to delegate the authority to exercise that right to the broker.

Moreover, with the disclosure of the name of the proposing purchaser came a request for a written contract of sale; and that, within the understanding of plaintiff, the situation called for such a writing, is shown by the correspondence. Now, if there was authority in the broker to sell, and, as is now claimed, he did sell to plaintiff, there could have been no real necessity for supplementing such sale by a writing on the subject; this, because the correspondence was specific as to the character and quantity of goods, the terms of sale, delivery, etc. If, forsooth, such writing was wanted by plaintiff to fix the terms of the sale, then it would seem to follow that within its understanding no sale had as yet been consummated. And there is nothing to indicate that it was wanted for any other purpose. The effect of the request, therefore, is to lend strength to the conclusion that neither the broker nor plaintiff understood that there was authority to consummate a sale, except in the defendant itself.

One other point made in argument may be noticed. Counsel for appellant seem to think that the no contract theory finds disparagement in the fact that a sale for account of defendant was reported by the broker on February 12th, and that this was not met by any protest or denial of authority; that, on the contrary, defendant later on forwarded sample labels from which selection by the purchaser might

be made.   But it will be observed that the letter of the broker, without naming the purchaser, advised that a contract would be forwarded.   On the next day there was a letter requesting of defendant that a contract be forwarded in favor of the plaintiff company.   It does not appear that anything was done pursuant to this letter.   As far as appears, matters remained in *statu quo* up to the writing of the letter by defendant respecting the matter of labels.   Indeed, it was not until after the labels were forwarded that plaintiff came to the knowledge that a purchase had been made on its account.   On March 5th, as it is made clear from the letter of the broker written on that date, a form of contract was submitted to defendant, which the latter evidently declined to sign.   This being the situation, there is no room for a claim of contract by ratification.

We think a citation of authorities in support of our conclusion is not needed, and the judgment of the court below is *affirmed*.